```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARMAINE MOON,

                Plaintiff,           1:17-cv01312-MAT
      -v-                            **DECISION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____
```

**INTRODUCTION**

Charmaine Moon ("Plaintiff"), represented by counsel, brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgement on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is granted to the extent that the matter is remanded for further administrative proceedings and Defendant's motion is denied.

**PROCEDURAL BACKGROUND**

On October 11, 2013, Plaintiff protectively filed for DIB and SSI, alleging disability beginning December 14, 2010, due to

a fractured spine, herniated disc, lower back issues, migraines, and grand mal seizures. Administrative Transcript ("T.") 89. The claims were initially denied on February 18, 2014, and Plaintiff timely requested a hearing. T. 116-32. An in-person hearing was conducted on April 11, 2016, by administrative law judge ("ALJ") Stephen Cordovani. T. 40-88. Plaintiff appeared with her attorney and testified. An impartial vocational expert ("VE") also testified. *Id*.

The ALJ issued an unfavorable decision on July 20, 2016. T. 14-39. Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied Plaintiff's request on October 12, 2017, making the ALJ's decision the final decision of the Commissioner. T. 1-6. Plaintiff then timely commenced this action.

**THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2016. T. 19.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 14, 2010. *Id*.

2

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: history of fractured vertebrae in the low back, disc herniations with multi-level fusion surgery, seizure disorder, and obesity. *Id*. The ALJ also considered Plaintiff's impairments of migraine headaches and affective disorder, and determined that neither created any significant work-related functional limitations, and thus they were non-severe. T. 20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 21-22. The ALJ specifically considered Listing 1.04 (Disorders of the Spine), Listing 11.02 (Convulsive Epilepsy), and Listing 11.03 (Nonconvulsive Epilepsy).

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), with the following additional limitations: can occasionally bend, lift, balance and climb ramps and stairs; cannot squat, kneel, crouch or crawl; cannot climb ladders, ropes or scaffolds; cannot perform work below waist level; must alternate sitting and standing at her discretion; and cannot work around hazards such as unprotected heights or dangerous moving mechanical parts. T. 22.

At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a receptionist. T. 32. In the alternative, at step five, the ALJ relied on the VE's testimony to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are unskilled jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of call-out operator, and charge account clerk. T. 33. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 34.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing

court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand of this matter is warranted for the following reasons: (1) the ALJ erred in substituting his own "medical" judgment for that of a physician; (2) the ALJ failed to provide good reasons for discounting the opinions of treating orthopedic surgeon Dr. Andrew Cappuccino; and (3) the ALJ failed to properly develop the record. For the reasons discussed below, the Court finds that the ALJ erred in making an RFC finding without a valid medical opinion to support it. The Court therefore finds that remand of this matter for further administrative proceedings is required.

**I. The Medical Opinions of Record Relating to Plaintiff's Physical Impairments**

Plaintiff was involved in a serious motor vehicle accident on December 14, 2010, in which she sustained an acute compression fracture at her L1 disc. At the time, Plaintiff had been working for several years as a certified nursing assistant, which is

5

classified as a semi-skilled job at a medium exertional level. T. 50-52, 80. An MRI performed the day following her accident showed the fracture, as well as an annular bulge of discs L3-4 and L4-5, and bilateral foramen stenosis at L4-5. T. 886. The treatment notes and medical opinions summarized below relate to the physical impairments resulting from Plaintiff's injuries.

### A. The Treatment Notes and Medical Opinions of Dr. Andrew Cappuccino

On January 10, 2011, Plaintiff first saw Dr. Cappuccino for treatment relating to her back injuries. T. 1210. Upon examination, Plaintiff exhibited a slow, antalgic gait, but was able to toe rise and heel rise. Plaintiff's ability to forward and retroflex was significantly reduced, secondary to her pain. T. 1212. Dr. Cappuccino assessed Plaintiff's back fracture as stable, prescribed a back brace, and increased her pain medications. Based on his evaluation, Dr. Cappuccino opined Plaintiff had a "temporary total degree of disability from any and all forms of employment." *Id*.

On May 2, 2011, Dr. Cappuccino reevaluated Plaintiff's injuries. Upon examination, Plaintiff had some weakness with knee extension and hip flexion on her left side, possibly secondary to pain. Plaintiff reported discomfort in her left buttock region and at the lumbosacral junction. Dr. Cappuccino opined Plaintiff

6

continued to have a "temporary total degree of disability for any and all forms of employment." T. 1215-16.

On October 20, 2011, Plaintiff returned to Dr. Cappuccino and reported ongoing tenderness in her lower back and left paraspinal musculature. She complained of a recent loss of sensation in association with bladder function. Dr. Cappuccino advised Plaintiff that she would need a urologic evaluation and possible urodynamic testing. T. 1217. Dr. Cappuccino noted that Plaintiff did not appear to be progressing back to her baseline of health and that surgical intervention could not be ruled out. He opined that Plaintiff had "an ongoing temporary total degree of disability." T. 1218.

On April 9, 2012, Dr. Cappuccino noted that Plaintiff had been dealing with increasing and worsening mechanical low back pain, as well as discomfort that had started radiating into the paragluteal regions bilaterally. In addition to the ongoing and chronic anterior wedge compression fracture of her L1 disc, a December 2011 MRI showed evidence of broad-based right-sided disc herniation at L4-L5, as well as moderate central stenosis, in conjunction with the synovial cyst communicating with the left facet joint. T. 1220. Upon examination, Plaintiff's ability to forward flex was significantly compromised and she reported her back bending was markedly worse and extremely limited. *Id*. Dr. Cappuccino noted that Plaintiff had failed physical therapy,

including both land and aquatic therapy, as well as chiropractic manipulation. Dr. Cappuccino opined that Plaintiff had an "ongoing temporary total degree of disability." T. 1221.

In November 2012, Dr. Cappuccino performed a two-stage procedure to repair Plaintiff's adjacent spinal segment at L3-L4 and stabilize her L3-L5 discs with pedicle screws and rod fixation. T. 1235.

On May 30, 2013, Dr. Cappuccino reported Plaintiff had been dealing with ongoing mechanical low back pain. Plaintiff was distraught regarding the chronicity of her back problems and lower extremity discomfort, in addition to her recent diagnosis of seizure activity. An examination showed superficial tenderness on her left paracentral region and weakness in her lower extremities. Dr. Cappuccino opined that Plaintiff remained with "an ongoing temporary total degree of disability while she [continued] to convalesce." T. 260-61.

On April 24, 2014, Dr. Cappuccino reexamined Plaintiff. She exhibited an antalgic gait. Palpation of the spine showed evidence of bilateral paralumbar spasm. Plaintiff's flexion was limited to approximately 40 degrees; extension was limited to 30 degrees. Her lateral bending was 30 degrees to the left and 40 degrees to the right. Plaintiff's straight leg raising tests were positive bilaterally. T. 1224. Dr. Cappuccino discussed

several options with her for pain management, including a second surgery. He opined that Plaintiff remained disabled. T. 1225.

On September 4, 2014, Dr. Cappuccino examined Plaintiff and recommended surgical decompression and stabilization of her L3-L4 discs. He opined that Plaintiff remained "completely and totally disabled" due to her motor vehicle accident. T. 1227. He performed an emergency lateral retroperitoneal subtotal discectomy, partial corpectomy, disk space distraction, and anterior lumbar interbody fusion of L3-L4 on Plaintiff on September 10, 2014. T. 1236.

On October 16, 2014, Dr. Cappuccino reported Plaintiff was doing "fairly well" four weeks status post-surgery. An examination revealed some diffuse give-way weakness from Plaintiff's knees downwards. Dr. Cappuccino noted Plaintiff was wearing her brace appropriately and that she should continue her home-based physical therapy regimen. T. 1229.

On November 24, 2014, Plaintiff was reexamined by Dr. Cappuccino. He reported she was ambulating slowly and cautiously, using a straight cane. She was wearing her brace appropriately. Plaintiff still had generalized weakness in her lower extremities. Dr. Cappuccino opined that Plaintiff continued to have "an ongoing temporary total degree of disability." He further noted that Plaintiff would require long-term care. T. 1231.

**B. The Opinions of Independent Medical Examiner Dr. Marc Appel**

Dr. Marc Appel examined Plaintiff on three occasions for insurance purposes in connection with her motor vehicle accident. T. 983-92.

On May 25, 2011, Plaintiff exhibited a significantly limited range of motion of the lower back in all directions. Straight leg raising tests were positive bilaterally. She had a markedly positive Fabere's sign on her left side and negative Fabere's sign on her right side. Plaintiff required assistance and rolled sideways to assume a seated position. She also exhibited decreased strength in her toes and ankles on her left side, which may have been secondary to her pain and inability to exert full effort. T. 984-85. Dr. Appel opined Plaintiff was disabled and unable to work in any capacity at that time. T. 986.

On October 24, 2011, Plaintiff was reexamined by Dr. Appel. T. 987-89. The examination findings were similar to the May 25, 2011 findings. T. 988. Dr. Appel opined that Plaintiff was disabled from performing any type of occupation. T. 989.

Plaintiff was examined by Dr. Appel again on March 26, 2012. T. 990-92. Plaintiff's range of motion of the lower back was significantly limited in all directions. She was unable to perform a straight leg raise in the supine position but was able to perform a straight leg raise in the seated position. T. 991.

10

Dr. Appel opined that Plaintiff was disabled and unable to work in any capacity at that time. T. 992.

### C. The Opinion of Consultative Examiner Dr. Samuel Balderman

On February 3, 2014, Dr. Balderman performed a consultative examination of Plaintiff at the Administration's request. T. 878-81. Plaintiff reported she had undergone a lumbar spine surgery one year prior. Her back pain was constant, intense, sharp and nonradiating. Plaintiff reported the pain was 9 out of 10 on a scale of 1 to 10. She stated that medications did not help to alleviate her back pain. In addition to Plaintiff's back issues, she complained of daily headaches for the past four years for which medications were very helpful. Plaintiff had also been experiencing grand mal seizures for the past year, which mostly occurred in her sleep. T. 878.

Upon examination, Plaintiff had reduced strength in both her upper and lower extremities due to her lumbar pain. She had moderate incisional pain to light touch. T. 879. Plaintiff's gait and station were normal. She was unable to walk on her heels or toes, though Dr. Balderman noted her effort was not complete. Plaintiff exhibited a normal range of motion in her cervical and thoracic spine. Her lumbar spine showed flexion at 30 degrees with poor lateral rotary movements. Straight leg raising tests were negative bilaterally. T. 880.

Dr. Balderman opined that Plaintiff had moderate limitation with repetitive bending and lifting due to her lumbar spine pain. He also noted Plaintiff displayed some symptom magnification during the evaluation. T. 879.

**II. The ALJ Permissibly Discounted the Opinions of Dr. Cappuccino and Dr. Appel**

Plaintiff argues the ALJ failed to provide good reasons for discounting the opinions of treating orthopedic surgeon Dr. Cappuccino and independent medical examiner Dr. Appel. For the reasons set forth below, the Court finds the ALJ acted within his discretion when giving "little" weight to Dr. Cappuccino's opinions.

Pursuant to the regulations applicable to Plaintiff's claim, an ALJ is required to give controlling weight to the opinion of a treating physician so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, it is permissible for an ALJ to give less than controlling weight to a treating physician's opinion he or she finds does not meet this standard, provided he or she "comprehensively set[s] forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quoting *Halloran v. Barnhart*,

12

362 F.3d 28, 33 (2d Cir. 2004)); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (stating the agency "will always give good reasons in our notice of determination or decision for the weight we give to [the claimant's] treating source's opinion"). Notably, a treating source's statement that a claimant is "disabled" is not considered a "medical opinion" and is not entitled to controlling weight because it represents an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("A statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled.").

In his decision, the ALJ assigned "little" weight to Dr. Cappuccino's opinions that generally indicated total temporary disability. T. 25-29. The ALJ reasoned that Dr. Cappuccino's opinions were vague and conclusory statements and therefore could not be given "great" weight. T. 31. The ALJ further noted that no functional discussion was present in Dr. Cappuccino's notes or opinions. Finally, the ALJ noted that Dr. Cappuccino's opinions of disability were conclusions within the jurisdiction of the Commissioner. *Id.* Likewise, the ALJ gave "little" weight to the opinions of Dr. Appel, noting that they were rendered shortly after Plaintiff's motor vehicle accident and would not have any long-term significance. Furthermore, the ALJ reasoned that Dr. Appel did not give any specific limitations

13

and that the determination of disability is reserved to the Commissioner. T. 31. The factors discussed by the ALJ in connection with his weighing of both doctors' opinions were appropriate considerations. Accordingly, the Court finds no error in the evaluation of Dr. Cappuccino's and Dr. Appel's statements that Plaintiff, at various times, had a temporary total disability.

### III. The ALJ's RFC Finding Is Not Supported by Substantial Evidence and Further Development of the Record Is Required

Plaintiff also argues the ALJ erred by relying on his own "medical" judgment in place of that of any physician when formulating the RFC finding. For the reasons set forth below, the Court finds the record lacked any useful medical evaluations of Plaintiff's functional limitations and thus the ALJ impermissibly based the RFC finding on his own lay interpretation of the medical evidence, warranting remand.

### A. The Opinion of Dr. Balderman Is Stale and Therefore Does Not Support the RFC Finding

Plaintiff argues that Dr. Balderman's opinion, which was given prior to her September 2014 surgery, is stale and thus does not constitute substantial evidence to support the ALJ's findings. The Court agrees.

Stale medical opinions do not constitute substantial evidence in support an ALJ's findings. *Camille v. Colvin*, 104 F. Supp.3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x (2d Cir.

14

2016) (summary order). While the mere passage of time does not necessarily render a medical opinion outdated or stale, subsequent surgeries and treatment notes indicating a claimant's condition has deteriorated may. *Jones v. Colvin*, No. 13-CV-06443, 2014 WL 256593, at *7 (W.D.N.Y. June 6, 2014) (ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition"); *Girolamo v. Colvin*, No. 13-CV-06309(MAT), 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (ALJ should not have afforded "great" weight to medical opinions rendered before plaintiff's second surgery).

The ALJ gave several different weights to Dr. Balderman's consultative report. He gave "great" weight to the period contemporaneous with the examination but noted that Plaintiff went on to have additional evaluations and treatment, including more surgery. Accordingly, the ALJ gave Dr. Balderman's report "little" weight in assessing overall disability. T. 31. As the ALJ appeared to acknowledge that Plaintiff's subsequent surgery and deteriorating medical condition rendered Dr. Balderman's opinion stale. Accordingly, the Court finds Dr. Balderman's opinion is stale and thus cannot constitute substantial evidence on which the ALJ could base his RFC finding. *See Biro v. Comm'r of Soc. Sec.*, 335 F. Supp.3d 464, 471 (W.D.N.Y. 2018) (consultative examiner's opinion rendered before plaintiff's knee

injury and subsequent surgeries was stale and not based on a complete medical record, and thus could not provide substantial evidence for ALJ's finding that plaintiff was not disabled.).

**B.　The Record Contains No Functional Assessment From an Acceptable Medical Source on Which the ALJ Could Base His RFC Finding**

Plaintiff also argues that the ALJ's rejection of Dr. Cappuccino's disability-supporting opinions left the record without any medical authority to support the RFC finding. The Court agrees.

"Although under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, 'an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment,'" *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (quotation omitted), the Court concludes that those circumstances are not present here. The ALJ found that Plaintiff had multiple "severe" impairments, including a history of fractured vertebrae in the low back, disc herniations with multi-level fusion surgery, and a seizure disorder. It is apparent based on a review of the medical record that these conditions did not result in "relatively minor" impairments; Plaintiff underwent multiple back surgeries and had a complicated recovery during which she failed several treatment modalities. *See, e.g., Dale v. Colvin*, No. 15-CV-496 (FPG), 2016 WL 4098431,

at *4 (W.D.N.Y. Aug. 2, 2016) (determining that the "common sense judgment" principle was inapplicable where the record "contains complex medical findings like MRI results"); *Milliken v. Berryhill*, No. 1:16-CV-00297 EAW, 2017 WL 3208635, at *18 (W.D.N.Y. July 28, 2017) ("common sense judgment" principle inapplicable where the plaintiff had received two surgical procedures to her vertebrae, was provided with an extensive pain management treatment routine for years, and faced a third spinal surgery).

As discussed above, the ALJ permissibly rejected the opinions of Dr. Balderman and Dr. Cappuccino. He also permissibly rejected the opinions of Dr. Appel, which were similar to Dr. Cappuccino's in that they provided no functional limitation discussion and instead specifically opined to Plaintiff's disability status. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). However, the rejection of all of the medical opinions pertaining to Plaintiff's physical limitations left the record without any functional assessments. Where the record contains no useful medical opinions or a body of evidence sufficient enough to properly assess a plaintiff's RFC, as is the case here, remand is warranted. *See McCarthy v. Colvin*, 66 F. Supp.3d 315, 322 (W.D.N.Y. 2014) ("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor

is required.") (quoting *Zorilla v. Chater*, 915 F. Supp. 662, 666-67 (S.D.N.Y. 1996)); *Wilson,*, 2015 WL 1003933, at *21 ("[A]lthough the RFC determination is an issue reserved for the Commissioner, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' as a general rule, the Commissioner 'may not make the connection himself.'") (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008) (internal quotation omitted in original)).

Accordingly, the Court finds that the ALJ's RFC finding is unsupported by substantial evidence and remand is required.

**C.  The ALJ Failed To Properly Develop the Record**

Plaintiff also argues the ALJ was obligated to further develop the record, in light of his rejection of the medical opinions of record regarding Plaintiff's physical impairments. The Court agrees.

Where, as here, the record is "devoid of any opinions from treating or examining medical sources regarding [the] Plaintiff's functional or work capacity limitations, such as Plaintiff's lifting, carrying, sitting or standing limits. . .[,] the ALJ [is] obligated to develop the record and obtain RFC assessments from [the] Plaintiff's treating and/or examining physicians." *Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 WL 1298997, at *19

(E.D.N.Y. Mar. 23, 2015. An ALJ's failure to do so necessitates remand. *Id*.; *see also Lilley v. Berryhill*, 307 F. Supp.3d 157, 160 (W.D.N.Y. 2018) (remanding where the record lacked a useful medical opinion by any treating or examining source that addressed whether and to what extent plaintiff's mental impairments impacted her ability to perform work-related functions); *Henley v. Berryhill*, No. 17-CV-445-FPG, 2018 WL 3866670, at *4 (W.D.N.Y. Aug. 15, 2018) ("The ALJ cannot 'play doctor,' . . . and rely on his lay opinion over . . . competent medical opinion[.]"). On remand, the ALJ shall obtain an opinion regarding Plaintiff's functional capacity from a treating source and obtain an updated consultative examination concerning Plaintiff's physical impairments.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Doc. 17) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Commissioner's motion for judgment on the pleadings (Doc. 20) is denied. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: May 24, 2019
Rochester, New York